UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------------X
```
ALONA LENSKY & OTAR DULARIDZE,          :
                                                      :
                                    Plaintiffs,       :
        -against-                                     :
                                                      :
TURK HAVA YOLLARI                                     :
                                                      :
                                    Defendant.        :
```
------------------------------------------------------------------X
```

```
┌────────────────────────────────────┐
│ USDC SDNY                           │
│ DOCUMENT                            │
│ ELECTRONICALLY FILED                │
│ DOC #: _____              │
│ DATE FILED: 9/20/2021               │
└────────────────────────────────────┘
```

1:20-cv-4978-GHW

<u>ORDER</u>

GREGORY H. WOODS, United States District Judge:

        Plaintiffs Alona Lensky and Otar Dularidze flew on a round-trip flight from New York to

Tbilisi, Georgia on a flight operated by Turk Hava Yollari A.O. ("THY").  Plaintiffs allege that

during a layover at Istanbul International Airport in Turkey, they suffered multiple injuries at the

hands of the Turkish police, who were acting under the direction of THY employees.  THY has

moved to dismiss Plaintiffs' claims on the ground that the Court does not have personal jurisdiction

over THY.  While the conduct alleged by Plaintiffs is egregious, because THY is a foreign

corporation and the conduct occurred exclusively in Turkey, the Court does not have jurisdiction

over THY.  Accordingly, THY's motion to dismiss is granted in full.

## I. BACKGROUND[1]

### A. Facts

        THY is the state-sponsored airline of the Republic of Turkey.  As an international carrier,

THY provides flights to and from multiple airports in the United States, including John F. Kennedy

International Airport ("JFK") in New York.  THY has a subsidiary company, Turkish Airlines, Inc.

("TA"), which maintains offices in New York City.

---

[1] The facts are drawn from Plaintiffs' amended complaint. Dkt. No. 21.

Plaintiffs Alona Lensky and Otar Dularidze are United States citizens who reside in New York.  In early 2019, Plaintiffs purchased plane tickets online from their New York residence for a round trip flight from JFK to Tbilisi, Georgia.  First Amended Complaint ("Am. Compl."), Dkt. No. 21, ¶¶ 11–12.  The itinerary included a layover at Istanbul International Airport on each leg of the trip between New York and Tbilisi.  *Id.*  On July 1, 2019, Plaintiffs, along with their two young children, arrived at Istanbul International Airport for the layover before their return flight to New York.  *Id.* ¶ 13.

Plaintiffs allege that as they waited in line on the jet bridge to board their flight, THY employees allowed other passengers to board before them until they were the last passengers waiting to board.  *Id.* ¶ 16.  THY employees then told Plaintiffs that the flight was closed.  *Id.* ¶ 17.  Dularidze requested to speak with a THY supervisor.  *Id.* ¶ 18.  When THY gate agents did not respond, Dularidze began recording his interaction with THY staff.  *Id.* ¶¶ 19–20.  The staff asked Plaintiffs to leave the jet bridge, but Plaintiffs refused to do so without first speaking with a supervisor.  *Id.* ¶ 21.

Eventually, the police arrived.  *Id.* ¶ 24.  Plaintiffs refused to leave the jet bridge until the police "t[ook] a report against the airline."  *Id.* ¶ 25.  One of the policemen then grabbed Plaintiffs' nine-month-old infant without permission and carried the infant off the jet bridge.  *Id.* ¶ 26.  Plaintiffs followed.  *Id.*  Once back in the terminal, the policeman handed the baby to a THY employee, who held the baby during the rest of the interaction between Plaintiffs and the police.  *Id.* ¶ 27.  Plaintiffs allege that THY employees told the police that Plaintiffs had taken a video and that they wanted it to be deleted.  *Id.* ¶ 29.  The police demanded that Plaintiffs delete the video.  *Id.* ¶ 30.  When they refused, the police dragged Dularidze to a nearby bathroom, which a THY gate agent unlocked for the police.  *Id.* ¶¶ 33–34.  Two police officers brought Dularidze into the bathroom and closed the door.  *Id.* ¶ 35.

Dularidze alleges that in the bathroom, one officer stepped on his feet and struck his legs and torso. *Id.* ¶ 36. The other pressed his gun to Dularidze's head, threatened to kill him, and then struck him in the side of the head and jaw with the gun. *Id.* ¶¶ 37–38. Dularidze alleges that he told the officer that he had recently had surgery on his jaw; the officer responded by hitting his jaw again. *Id.* ¶ 39. The police then opened the door so that Dularidze could see his children and told him that this would be the last time he would see them. *Id.* ¶ 40. Dularidze managed to force his way out of the restroom and ran toward his wife, who was screaming and trying to reach her husband. *Id.* ¶ 41. The police dragged him back into the restroom. *Id.* ¶ 43. In the restroom, Dularidze permitted the police to delete the videos of his and his wife's interactions with THY employees. *Id.* ¶ 45. The police then released Dularidze, spoke with THY employees, and left. *Id.* ¶ 46.

Plaintiffs allege that an airport employee who witnessed the altercation advised them to contact THY management. *Id.* ¶ 48. The airline employee, who had previously provided some translation help to Plaintiffs, had "an extensive conversation in Turkish with an airline supervisor in which the Plaintiff could only make out the word for police." *Id.* ¶¶ 47–49. Plaintiffs were upgraded to business class and boarded a flight to JFK six hours later. *Id.* ¶ 49.

Dularidze alleges that he suffered physical and emotional injuries, including a swollen jaw, a gouged neck, lasting nerve pain in his leg that requires ongoing treatment, migraine headaches, sleeplessness, nightmares, flashbacks, and depression, all due to PTSD. *Id.* ¶ 70. Lensky claims that she suffered terror, horror, and emotional trauma. *Id.* ¶ 71. Plaintiffs assert that THY is responsible for the injuries they suffered at the hands of the police because THY employees summoned the police, did nothing to help Plaintiffs or prevent their injuries, and assisted the police in their assault.

**B. Procedural History**

Plaintiffs filed their original complaint against "Turkish Airlines Inc." on June 29, 2020. Dkt. No. 2. Plaintiffs brought claims for negligence, negligent infliction of emotional distress,

intentional infliction of emotional distress, assault, false imprisonment, and in the alternative, for an accident under the Montreal Convention. *Id.* Defendant THY answered the complaint on August 25, 2020 and notified the Court that it intended to file a motion to dismiss. Dkt. No. 8. The Court held a pre-trial conference on September 4, 2020, during which the Court ordered the parties to submit a joint letter regarding the proper identity of the defendant. Dkt. No. 11. On September 14, 2020, the parties submitted a joint letter stipulating that THY was the proper defendant, not "Turkish Airlines Inc." Dkt. Nos. 14–15. Plaintiffs filed their amended complaint against THY on September 23, 2020. Dkt. No. 21. THY filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) for a lack of personal jurisdiction on September 28, 2020. Dkt. Nos. 23–24. Plaintiffs filed their opposition to the motion on October 19, 2020. Dkt. No. 25. THY filed their reply on October 26, 2020. Dkt. No. 26.

## II. Legal Standard

THY moves to dismiss all claims for lack of personal jurisdiction. On a motion to dismiss pursuant to Rule 12(b)(2), the "plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010) (citing *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (per curiam)); *see also Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999) ("When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant."). To defeat a jurisdiction-testing motion, the plaintiff's burden of proof "varies depending on the procedural posture of the litigation." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). At the pleading stage—and prior to discovery—a plaintiff need only make a *prima facie* showing that jurisdiction exists. *Id.* at 84–85; *see also Eades v. Kennedy, PC Law Offices*, 799 F.3d

4

161, 167–68 (2d Cir. 2015) ("In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013))).

If a court considers only pleadings and affidavits, the plaintiff's *prima facie* showing "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *In re Terrorist Attacks on September 11, 2011*, 714 F.3d 659, 673 (2d Cir. 2013) (quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (internal quotation marks omitted)).  The allegations made by the plaintiff in the complaint "must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (quoting *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993)).  If the parties present conflicting affidavits, however, "all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Seetransport Wiking*, 989 F.2d at 580 (quoting *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir. 1990) (per curiam)).  "In determining whether a plaintiff has met this burden, [a court] will not draw argumentative inferences in the plaintiff's favor, nor must [a court] accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks*, 714 F.3d at 673 (internal citations and quotation marks omitted).

District courts "resolving issues of personal jurisdiction must . . . engage in a two-part analysis.  First, they must determine whether there is jurisdiction over the defendant under the relevant forum state's laws . . . .  Second, they must determine whether an exercise of jurisdiction under these laws is consistent with federal due process requirements." *Bank Brussels Lambert*, 171 F.3d at 784.

## III. DISCUSSION

Plaintiffs argue that this court has personal jurisdiction over THY under (1) the Montreal Convention, (2) New York's long-arm statute, and (3) Federal Rule of Civil Procedure 4(k)(2). Plaintiffs fail to make a *prima facie* showing that jurisdiction exists on any of those grounds.

### A. The Montreal Convention

The Montreal Convention governs the uniform system of liability for international air carriers. *See* Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, S. Treaty Doc. No. 106–45 (2000) (the "Montreal Convention"); *Ehrlich v. Am. Airlines, Inc.*, 360 F.3d 366, 371 n.4 (2d Cir. 2004). Plaintiffs argue that the Court has personal jurisdiction over THY under the Montreal Convention's jurisdictional provision.[2] However, "courts have consistently concluded that the Montreal Convention affords subject matter jurisdiction, not personal jurisdiction." *Royal & Sun All. Ins. PLC v. UPS Supply Chain Sols., Inc.*, No. 16 CIV. 9791, 2018 WL 1888483, at *3 (S.D.N.Y. Apr. 5, 2018); *see also Fisher v. Qantas Airways Ltd.*, No. CV-20-00362, 2021 WL 733372, at *5 (D. Ariz. Feb. 24, 2021) ("[T]his Court rejects Plaintiff's argument that the Convention's fifth jurisdiction confers personal jurisdiction over Qantas in Arizona."); *Diab v. Brit. Airways, PLC*, No. CV 20-3744, 2020 WL 6870607, at *3 (E.D. Pa. Nov. 23, 2020*)* ("Courts have consistently concluded that the jurisdictional article of the Montreal Convention addresses subject matter jurisdiction, not personal jurisdiction."); *Cordice v. LIAT Airlines*, No. 14-cv-2924, 2015 WL 5579868, at *1 n.2 (E.D.N.Y. Sept. 22, 2015) ("[T]he Court need not conduct an exhaustive analysis under [the Montreal] Convention to determine subject matter jurisdiction as

---

[2] Article 33(1) of the Montreal Convention provides: "An action for damages must be brought, at the option of the plaintiff, in the territory of one of the States Parties, either before the court of the domicile of the carrier or of its principal place of business, or where it has a place of business through which the contract has been made or before the court at the place of destination." Montreal Convention Art. 33(1). In certain circumstances, Article 33(2) provides a fifth basis of jurisdiction "in the territory of a State Party in which at the time of the accident the passenger has his or her principal and permanent residence." Montreal Convention Art. 33(2).

plaintiff's claims fail for lack of personal jurisdiction . . . .").  Consequently, the Montreal Convention does not support Plaintiffs' claim that the Court has personal jurisdiction over THY.

### B. New York's Long Arm Statute

Plaintiffs have not met their burden to establish that the Court has jurisdiction over THY under New York's long-arm statute.  Plaintiffs argue that the Court has personal jurisdiction under sections 302(a)(1) and 302(a)(3) of the N.Y. C.P.L.R.  The Court concludes that neither statutory basis confers personal jurisdiction over THY.

#### 1. Section 302(a)(1)

Section 302(a)(1) does not confer personal jurisdiction over THY.  Under section 302(a)(1), "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1).  "To determine the existence of jurisdiction under section 302(a)(1), a court must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (citing *Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs.*, 7 N.Y.3d 65, 71 (2006)).

The amended complaint adequately pleads that THY transacts business in New York for purposes of section 302(a)(1).  "[A] non-domiciliary can be said to transact business within the meaning of [section] 302(a)(1)" if "the non-domiciliary seeks out and initiates contact with New York, solicits business in New York, and establishes a continuing relationship." *Paterno v. Laser Spine Inst.*, 24 N.Y.3d 370, 377 (2014).  Here, the complaint alleges, and THY does not dispute, that THY "regularly operates commercial air service into JFK Airport," "sells . . . tickets for carriage" in New York, and "is registered as a foreign corporation with the New York State Corporation Commission . . . to transact business in the State of New York." Am. Compl. ¶ 6.

Although Plaintiffs meet the first requirement, Plaintiffs fail to show that that their claims arise out of THY's business transactions within New York. "[A] claim 'aris[es] from' a particular transaction when there is 'some articulable nexus between the business transacted and the cause of action sued upon,' or when 'there is a substantial relationship between the transaction and the claim asserted.'" *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (citations omitted) (first quoting *McGowan v. Smith*, 52 N.Y.2d 268, 272 (1981); and then quoting *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988)). "[A]n articulable nexus or substantial relationship exists 'where at least one element [of the cause of action] arises from the New York contacts . . . .'" *D & R Glob. Selections, S.L. v. Bodega Olegario Falcon Pineiro*, 29 N.Y.3d 292, 299 (2017) (quoting *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 341 (2012)). "The nexus is insufficient where the relationship between the claim and transaction is 'too attenuated' or 'merely coincidental.'" *Id.* (quoting *Johnson v. Ward*, 4 N.Y.3d 516, 520 (2005)).

Plaintiffs acknowledge that the fact that they purchased tickets for their flight in New York is insufficient to establish personal jurisdiction over THY. Dkt. No. 25 ("Pls.' Opp'n") at 15–16. "[T]he mere purchase of a ticket in New York is insufficient to establish personal jurisdiction based upon an injury that occurred elsewhere while travelling on that ticket." *Simmons v. Nat'l R.R. Passenger Corp.*, No. 19 CIV. 6986, 2020 WL 2904847, at *3 (S.D.N.Y. June 3, 2020) (quoting *Cordice*, 2015 WL 5579868, at *4 (collecting cases)); *see also Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 802 (S.D.N.Y. 2015) ("[C]ourts are particularly reticent to find that a claim arose from New York contacts where . . . a 'New York contract was a but-for cause of an out-of-state, non-commercial tort.'" (quoting *Torres v. Monteli Travel, Inc.*, No. 09-CV-2714, 2011 WL 2670259, at *9 (E.D.N.Y. July 7, 2011))), *aff'd*, 660 F. App'x 43 (2d Cir. 2016).

Instead, Plaintiffs assert personal jurisdiction because THY maintains a continuous business presence in New York, and because the alleged tortious conduct of THY employees occurred "as a

result of [Plaintiffs'] complaint *about the very flight that flew them out and back into [New York]*." Pls.' Opp'n at 17. Plaintiffs' arguments are misplaced. Here, the alleged tortious conduct occurred entirely in Turkey, not in New York. None of the elements of Plaintiffs' legal claims—various torts arising out of Dularidze's assault at the hands of the Turkish police—arise out of THY's contacts with New York. Although the torts allegedly occurred because of Plaintiffs' complaint about the flight, that the flight's destination was New York is wholly unrelated to the assault. The relationship between Plaintiffs' claims and THY's contacts with New York is merely coincidental. Thus, Plaintiffs have not established a sufficient nexus between their claims and THY's contracts with New York to support the exercise of personal jurisdiction over THY under section 302(a)(1). *See Simmons*, 2020 WL 2904847, at *4 (concluding that section 302(a)(1) did not confer personal jurisdiction over a railroad where plaintiff sued for alleged injuries that occurred at a stop in Washington, D.C., during a train trip that began and ended in New York).

## 2. Section 302(a)(3)

The Court does not have jurisdiction over THY under section 302(a)(3) because Plaintiffs' alleged injuries occurred in Turkey rather than New York. Section 302(a)(3) provides that

> a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . commits a tortious act without the state causing injury to person or property within the state . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

N.Y. C.P.L.R. § 302(a)(3). This provision "requires commission of a tortious act outside New York State which causes injury within the State." *Best Cellars Inc. v. Grape Finds at Dupont, Inc.*, 90 F. Supp. 2d 431, 448 (S.D.N.Y. 2000). "[C]ourts determining whether there is injury in New York sufficient to warrant § 302(a)(3) jurisdiction must generally apply a situs-of-injury test, which asks them to locate the 'original event which caused the injury.'" *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196,

209 (2d. Cir. 2001) (quoting *Bank Brussels Lambert*, 171 F.3d at 791). "[T]he situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are felt by the plaintiff." *Id.* (quoting *Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990)). Here, the events giving rise to the alleged injuries—the Turkish police assaulting Dularidze—occurred in Turkey, not in New York. Thus, section 302(a)(3) does not confer personal jurisdiction over THY. *See, e.g.*, *Cordice*, 2015 WL 5579868, at *5 ("Although [Plaintiff]'s symptoms persisted after she returned to New York, her original injury did not occur in New York and therefore there is no basis for jurisdiction under § 302(a)(3)."); *Wilson v. Danka Corp.*, No. 01 CIV. 10592, 2002 WL 31929120, at *3 (S.D.N.Y. Jan. 28, 2003) ("The fact that the consequences of . . . alleged [tortious] acts may have continued in New York does not make New York the site of the tort.").

### C.  Fed. R. Civ. P. 4(k)(2)

Federal Rule of Civil Procedure 4(k)(2) does not confer the Court with personal jurisdiction over THY. Under Rule 4(k)(2), a court may exercise personal jurisdiction over a defendant if the following requirements are met: "(1) the claim must arise under federal law; (2) the defendant must not be 'subject to jurisdiction in any state's courts of general jurisdiction'; and (3) the exercise of jurisdiction must be 'consistent with the United States Constitution and laws.'" *Porina v. Marward Shipping Co.*, 521 F.3d 122, 127 (2d Cir. 2008) (quoting FED. R. CIV. P. 4(k)(2)).

The exercise of personal jurisdiction over THY would not be consistent with the United States Constitution. Accordingly, the Court need not address whether Plaintiffs satisfy the first two requirements under Rule 4(k)(2). *See Cordice*, 2015 WL 5579868, at *5 (assuming, without deciding, that the plaintiff's claim under the Montreal Convention arose under federal law and that the defendant was not subject to jurisdiction in any state's court of general jurisdiction because the defendant's contacts with the United States were not consistent with the requirements of due process).

10

"Rule 4(k)(2) confers personal jurisdiction over a defendant so long as the exercise of jurisdiction comports with the Due Process Clause of the Fifth Amendment." *Dardana Ltd. v. Yuganskneftegaz*, 317 F.3d 202, 207 (2d Cir. 2003). "[D]ue process requires a plaintiff to allege (1) that a defendant has 'certain minimum contacts' with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances." *In re Terrorist Attacks*, 714 F.3d at 673 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "The due process analysis for Rule 4(k)(2) jurisdiction hinges on whether the non-resident has sufficient minimum contacts with the United States as a whole instead of with the specific forum state." *George Moundreas & Co SA v. Jinhai Intelligent Mfg. Co*, No. 20-CV-2626, 2021 WL 168930, at *11 (S.D.N.Y. Jan. 18, 2021) (citing *Porina*, 521 F.3d at 127).

"To determine whether a defendant has the necessary 'minimum contacts,' a distinction is made between 'specific' and 'general' personal jurisdiction." *In re Terrorist Attacks*, 714 F.3d at 673. "*Specific jurisdiction* exists where a forum exercises personal jurisdiction over a defendant 'in a suit arising out of or related to the defendant's contacts with the forum.'" *Porina*, 521 F.3d at 128 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). "A court's *general* jurisdiction over a non-resident, on the other hand, is based on a defendant's general business contacts with the forum, and 'permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts.'" *Id.* (quoting *Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996)).

### 1. General Jurisdiction

"A court may assert general personal jurisdiction over a foreign defendant to hear any and all claims against that defendant only when the defendant's affiliations with the State in which suit is brought 'are so constant and pervasive as to render [it] essentially at home in the forum . . . .'" *Waldman v. Palestinian Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (alteration in original) (quoting

*Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014)). "[E]xcept in a truly exceptional case, a corporate defendant may be treated as essentially at home only where it is incorporated or maintains its principal place of business." *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 498 (2d Cir. 2020) (quoting *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016)).

THY is not subject to general jurisdiction in the United States. THY is not incorporated in the United States and does not maintain its principal place of business in the United States. Am. Compl. ¶ 6. The alleged contacts that THY has with the United States—that THY operates flights out of the United States and facilitates those operations with personnel and supporting services—are insufficient to render THY at home in the United States. *See Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 226 (2d Cir. 2014) ("[E]ven a company's 'engage[ment] in a substantial, continuous, and systematic course of business' is alone insufficient to render it at home in a forum." (quoting *Daimler*, 571 U.S. at 138)). THY's alleged contacts with the United States are not so substantial that they qualify as "exceptional." *See Waldman*, 835 F.3d at 335 (citing *Daimler*, 571 U.S. at 139 n.19).

### 2. **Specific Jurisdiction**

Specific personal jurisdiction is predicated on "an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks and alteration omitted). "[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (internal quotation marks omitted). "[T]he defendant's suit-related conduct must create a substantial connection with the forum . . . ." *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

There are two "independent, if conceptually overlapping, methods of demonstrating minimum contacts." *Best Van Lines*, 490 F.3d at 243. "The first is through 'purposeful availment,'

in which 'the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there.'" *Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp. AG*, 277 F. Supp. 3d 521, 589 (S.D.N.Y. 2017) (quoting *Licci*, 732 F.3d at 170). "The second is through 'purposeful direction,' in which 'the defendant took intentional, and allegedly tortious, actions expressly aimed at the forum.'" *Id.* (quoting *In re Terrorist Attacks*, 714 F.3d at 674).

"The 'purposeful direction' test is also referred to as the 'effects test,' which is a 'theory of personal jurisdiction typically invoked where . . . the conduct that forms the basis for the controversy occurs entirely out-of-forum, and the only relevant jurisdictional contacts with the forum are therefore in-forum effects harmful to the plaintiff.'" *Id.* (quoting *Licci*, 732 F.3d at 173). "In such circumstances, the exercise of personal jurisdiction may be constitutionally permissible if the defendant expressly aimed its conduct at the forum." *Id.* (quoting *Licci*, 732 F.3d at 173). "[T]he fact that harm in the forum is foreseeable . . . is insufficient for the purpose of establishing specific personal jurisdiction over a defendant." *Waldman*, 835 F.3d at 339 (quoting *In re Terrorist Attacks*, 714 F.3d at 674). "A forum['s] . . . exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Walden*, 571 U.S. at 286.

Plaintiffs' allegations rely almost entirely on THY's general contacts with the United States. Specifically, Plaintiffs argue that THY "transacts a great deal of business in the United States, profiting from the daily flights that travel in and out of multiple US States," that THY "'acts' every day in the United States to facilitate and implement this travel by way of cargo personnel, mechanics, flight crews, sales agents, and executives," and that THY "has an effect in the United States, even while it operates abroad, due to the transportation that it undertakes for American citizens all around the world." Pls.' Opp'n at 23. However, Plaintiffs fail to show how THY's suit-related

conduct, namely the alleged tortious conduct of THY's employees, has a substantial connection with the United States.

Here, the conduct that forms the basis of Plaintiffs' claims occurred entirely outside of the United States. Nothing in the amended complaint suggests that THY employees took intentional, tortious actions aimed at the United States. *See In re Terrorist Attacks*, 714 F.3d at 674 ("[S]pecific personal jurisdiction properly exists where the defendant took 'intentional, and allegedly tortious, actions . . . expressly aimed' at the forum." (quoting *Calder v. Jones*, 465 U.S. 783, 789 (1984)). Although the alleged torts were committed as Plaintiffs attempted to get on a THY flight to the United States, the allegations do not establish that the destination of the flight was at all relevant to the commission of the torts. Instead, it is merely a coincidence that the flight was traveling to the United States. The United States was not the "focal point" or "nucleus" of the alleged harm. *See Waldman*, 835 F.3d at 340. Accordingly, the Court concludes that the exercise of jurisdiction over THY does not comport with due process.

### D. Request for Jurisdictional Discovery

Finally, Plaintiffs ask the Court—if it grants THY's motion to dismiss, as the Court does— to allow 90 days for jurisdictional discovery to determine whether the court has general personal jurisdiction over THY "based upon the activities in this forum of its subsidiary" TA. Pls.' Opp'n at 7–8, 24–26. Plaintiffs' request for jurisdictional discovery is denied.

"District courts have broad discretion to decide whether to allow jurisdictional discovery and, if so to what extent." *In re MS Angeln GmbH & Co. KG*, No. 10 Civ. 4820, 2012 WL 1080300, at *7 (S.D.N.Y. Mar. 29, 2012) (first citing *Frontera Res. Azer. Corp. v. State Oil Co. of Azer. Republic*, 582 F.3d 393, 401 (2d Cir. 2009); and then citing *Lehigh Valley Indus., Inc. v. Birenbaum*, 527 F.2d 87, 93 (2d Cir. 1975)). In light of that discretion, the Second Circuit has repeatedly affirmed denials of jurisdictional discovery where the plaintiffs failed to demonstrate a *prima facie* case for personal

jurisdiction over the defendants. *See, e.g.*, *Best Van Lines*, 490 F.3d at 255 (concluding that district court was "well within its discretion in declining to permit discovery because the plaintiff had not made out a prima facie case for jurisdiction"); *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 186 (2d Cir. 1998) ("Since the [plaintiffs] did not establish a prima facie case that the district court had jurisdiction over [defendant], the district court did not err in denying discovery on that issue.").

> At the same time,
>
> [i]t is well settled under Second Circuit law that, even where plaintiff has not made a *prima facie* showing of personal jurisdiction, a court may still order discovery, in its discretion, when it concludes that the plaintiff may be able to establish jurisdiction if given the opportunity to develop a full factual record.

*Ikeda v. J. Sisters 57, Inc.*, No. 14-cv-3570, 2015 WL 4096255, at *8 (S.D.N.Y. July 6, 2015) (quoting *Leon v. Shmukler*, 992 F. Supp. 2D 179, 194 (E.D.N.Y. 2014) (citing in turn, *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 208 (2d Cir. 2003))); *see Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d 736, 761 (2004) ("If a plaintiff has identified a genuine issue of jurisdictional fact, jurisdiction[al] discovery is appropriate even in the absence of a prima facie showing as to the existence of jurisdiction."). "[A] court should take care to give the plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction . . . ." *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (internal quotation marks and citation omitted).

Courts often consider the scope of the proposed requests and whether the particular facts the party seeks to adduce could aid in its jurisdictional inquiry. *See Royalty Network Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 425 (S.D.N.Y. 2009). This is because a "plaintiff cannot put [a] defendant through the costly process of discovery, even discovery limited to jurisdictional matters, simply because it thinks that it can probably show significant contact with the state of New York if discovery were to proceed." *Bellepointe, Inc. v. Kohl's Dep't Stores, Inc.*, 975 F. Supp. 562, 565 (S.D.N.Y. 1997).

Thus, a district court can deny requests for jurisdictional discovery where the request amounts to "a fishing expedition unlikely to uncover any material facts that would alter" its conclusions regarding personal jurisdiction. *Duff & Phelps Sec., LLC v. Wisniewski*, No. 16 CV. 7226, 2017 WL 2880849, at *5 (S.D.N.Y. July 5, 2017); *see SPV Osus Ltd. v. UniCredit Bank Austria*, No. 18 CV. 3497, 2019 WL 1438163, at *12 (S.D.N.Y. Mar. 30, 2019) (refusing to allow jurisdictional discovery where "[p]laintiff does not point to any particular facts that it would hope to discover that would permit [the c]ourt to exercise jurisdiction"); *M. Shanken Comm'ns, Inc. v. Variant Events, LLC*, No. 10 Civ. 4747, 2010 WL 4159476, at *9 (S.D.N.Y. Oct. 7, 2010).

The Court rejects Plaintiffs' request for jurisdictional discovery. Plaintiffs seek to exert personal jurisdiction over THY on the basis that TA is an alter ego of THY. To establish jurisdiction under an alter-ego theory, Plaintiffs must show that "the allegedly controlled entity 'was a shell' for the allegedly controlling party." *Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.*, 475 F. Supp. 2d 456, 459 (S.D.N.Y. 2007) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)).

> Among the factors to be considered in determining whether a corporation is a "shell" are: the failure to observe corporate formality; inadequate capitalization; intermingling of personal and corporate funds; the sharing of common office space, address and telephone numbers of the alleged dominating entity and the subject corporation; an overlap of ownership, directors, officers or personnel; the use of the corporation as a means to perpetrate the wrongful act against the plaintiff; as well as any other evidence tending to show that the company is being used as a mere shell.

*Miramax Film Corp. v. Abraham*, No. 01 CV 5202, 2003 WL 22832384, at *8 (S.D.N.Y. Nov. 25, 2003) (collecting cases).

Plaintiffs base their alter-ego theory solely on the bare assertion "that TA exists to further the business of its parent, THY, and that THY has control over TA's operations." Pls.' Opp'n at 24. Plaintiffs argue that this assertion is a "reasonable inference" merely because THY and TA "are both in the business of conducting air transport to and from the United States." *Id.* These unsupported

16

allegations cannot carry Plaintiffs' broad request for "discovery to determine whether . . . there is any practical distinction between the two entities or if TA and THY overlap operations such that there is little to distinguish between the two." *Id.* at 25.  Although Plaintiffs acknowledge the fact-intensive nature of the alter-ego inquiry, Plaintiffs make no attempt to define the scope of their discovery request or to specify what evidence they would seek to show jurisdiction.

Because Plaintiffs failed to make a *prima facie* showing of personal jurisdiction over THY, and because Plaintiffs do not point to any specific facts that they would hope to discover to support their jurisdictional claim, the Court declines to grant Plaintiffs' request for jurisdictional discovery.

## IV. CONCLUSION

For the reasons described above, THY's motion to dismiss is GRANTED.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 23, to enter judgment for THY, and to close this case.

SO ORDERED.

Dated:  September 20, 2021
New York, New York

_____
GREGORY H. WOODS
United States District Judge

17