```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/28/2024
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                   :

OTAR DULARIDZE, *et al.*,          :

                                   :

                      Plaintiffs,    :                    1:20-cv-4978-GHW

                                   :

               -v –                :       MEMORANDUM OPINION &

                                   :               ORDER

TURK HAVA YALLARIO A.O.,        :

                                   :

                     Defendant.    :

                                   :
-------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

Plaintiffs are New York residents who purchased plane tickets from Turk Hava Yollari, A.O. ("THY"), a Turkish air carrier with a significant business presence in the United States. While boarding a connecting flight in Istanbul, Turkey, Plaintiffs argued with a THY gate agent. The gate agent called the police, who brutally assaulted one of the plaintiffs in an airport bathroom while THY gate agents looked on.

Plaintiffs sued THY, asserting that THY should be held responsible for the assault. THY moved to dismiss the complaint for lack of personal jurisdiction, emphasizing the attenuated connection between Plaintiffs' purchase of THY tickets in New York and the assault by Turkish police during the layover in Istanbul. Because Defendant's significant business operations in the United States give rise to general jurisdiction over Defendant, Defendant's motion to dismiss for lack of personal jurisdiction is DENIED.

## II.    BACKGROUND

### A.  Factual Background

The Court refers to its original opinion in this case for a comprehensive summary of the facts of this case but will briefly outline the facts relevant to this motion. *See* Dkt. No. 27

("September Opinion"). Plaintiffs Otar Dularidze and Alona Lensky are residents of New York.

Dkt. No. 2 ("Complaint") ¶ 5.[1] While in New York, they purchased roundtrip plane tickets from

THY, flying from New York to Tbilisi, Georgia with layovers in Istanbul, Turkey in both directions.

*Id.* ¶¶ 11–12.

THY is an air carrier organized in Turkey with its principal place of business in Turkey. Dkt.

No. 41 ("Ozcan Decl.") ¶ 2. It has 220 employees based in the United States and services thirteen

airports in the United States. *Id.* ¶¶ 5–6. Each year, THY derives billions of dollars in revenue from

its operations in the United States. *Id.* ¶ 7.

In their complaint, Plaintiffs allege that on their return trip, during their layover in Istanbul, a

THY gate agent prevented them from boarding their flight to New York. Complaint ¶¶ 16–17.

When Plaintiffs asked to speak to a supervisor and began filming the interaction, the gate agents

called the police. *Id.* ¶¶ 18–24. The gate agents asked the police to delete Plaintiffs' video. *Id.* ¶ 29.

Plaintiffs allege that the police then physically assaulted Mr. Dularidze in an airport bathroom as the

gate agents looked on. *Id.* ¶¶ 33–44.

### B. Procedural History

Plaintiffs filed a suit asserting multiple tort claims against Defendant, including a claim under

the Montreal Convention. Defendant moved to dismiss Plaintiffs' complaint for lack of personal

jurisdiction under Federal Rule of Civil Procedure 12(b)(2) ("Rule 12(b)(2)"). Dkt. No. 23. In

response, Plaintiffs asserted that the Court could exercise personal jurisdiction over the defendant

based on the Montreal Convention, New York's long-arm statute, or Federal Rule of Civil

Procedure 4(k)(2) ("Rule 4(k)(2)"). Dkt. No. 25. In a September 2021 opinion (the "September

Opinion"), the Court held that none of those authorities provided a basis for personal jurisdiction.

---

[1] The allegations in the complaint are taken "as true 'to the extent they are uncontroverted'" by evidence submitted by the parties. *NuMSP, LLC v. St. Etienne*, 462 F. Supp. 3d 330, 341 (S.D.N.Y. 2020) (quoting *GlaxoSmithKline LLC v. Laclede, Inc.*, No. 18-cv-4945, 2019 WL 293329, at *3 (S.D.N.Y. Jan. 23, 2019)).

*See* September Opinion.

Plaintiffs appealed, and the Second Circuit affirmed in part and vacated in part the Court's September Opinion. *See Lensky v. Turk Hava Yollari, A.O.*, No. 21-2567-CV, 2023 WL 6173334 (2d Cir. Sept. 22, 2023) (summary order). Specifically, the Second Circuit affirmed the Court's ruling that the Montreal Convention did not confer personal jurisdiction over THY. *Id.* at *1. However, the Second Circuit vacated the Court's ruling regarding the lack of personal jurisdiction under Rule 4(k)(2) and remanded the case for the Court to "determine whether there is a basis, consistent with this order, for exercising general jurisdiction or specific jurisdiction over THY under Rule 4(k)(2)." *Id.* at *3.

Following the Second Circuit's order, the parties submitted supplemental briefing regarding the exercise of personal jurisdiction under Rule 4(k)(2). Defendant argued that the Court should apply the standard articulated in the Supreme Court's opinion in *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) and consider whether the defendant was "essentially at home" in the United States to determine the question of general jurisdiction. It also reiterated its argument about the attenuated connection between Plaintiffs' injury and their purchase of plane tickets in New York. Dkt. No. 42. Plaintiffs argued that Rule 4(k)(2) conferred both general and specific jurisdiction. Dkt. No. 43. They asserted that the Court should evaluate the question of general jurisdiction using the "continuous and systematic" standard articulated in the Second Circuit's opinion in *Porina v. Marward Shipping Co.*, 521 F.3d 122, 127 (2d Cir. 2008). The supplemental briefing was complete when Defendant filed its reply. Dkt. No. 44.

## III.    LEGAL STANDARD

On a motion to dismiss pursuant to Rule 12(b)(2), the "[non-movant] bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010) (citing *In re Magnetic Audiotape*

*Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (*per curiam*)); *accord Bank Brussels Lamberts v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999) (same).  To defeat a jurisdiction-testing motion, the non-movant's burden of proof "varies depending on the procedural posture of the litigation." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).  At the pleading stage—and prior to discovery—a [non-movant] need only make a *prima facie* showing that jurisdiction exists.  *Id.* at 84–85; *see also Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 167–68 (2d Cir. 2015) ("In order to survive a motion to dismiss for lack of personal jurisdiction, a [non-movant] must make a prima facie showing that jurisdiction exists.") (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013)).

Courts may rely on materials outside the pleadings in considering a motion to dismiss for lack of personal jurisdiction.  *See DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001).  If a court considers only pleadings and affidavits, the non-movant's prima facie showing "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the [movant]." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)).  The allegations in the complaint must be taken "as true 'to the extent they are uncontroverted' by the [movant's] affidavits, 'which the district court may also consider.'"  *NuMSP, LLC v. St. Etienne*, 462 F. Supp. 3d 330, 341 (S.D.N.Y. 2020) (quoting *GlaxoSmithKline LLC v. Laclede, Inc.*, No. 18-cv-4945, 2019 WL 293329, at *3 (S.D.N.Y. Jan. 23, 2019)) (citing *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727–28 (2d Cir. 2012)).  But if the parties present conflicting affidavits, "all factual disputes are resolved in the [non-movant's] favor, and the [non-movant's] prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580

(2d Cir. 1993) (citation omitted).  Courts will not, however, "draw argumentative inferences in the [non-movant's] favor . . . [or] accept as true a legal conclusion couched as a factual allegation."  *In re Terrorist Attacks*, 714 F.3d at 673 (internal quotation marks and citation omitted).

## IV.   DISCUSSION

### A.   Rule 4(k)(2)

In accordance with the Second Circuit's mandate, the Court analyzes whether Rule 4(k)(2) confers general or specific jurisdiction over THY.  The Court holds that Rule 4(k)(2) confers general jurisdiction over THY, because THY has continuous and systematic contacts with the United States.

Under Rule 4(k)(2), a court may exercise personal jurisdiction over a defendant if the following requirements are met:  "(1) the claim must arise under federal law; (2) the defendant must not be 'subject to jurisdiction in any state's courts of general jurisdiction'; and (3) the exercise of jurisdiction must be 'consistent with the United States Constitution and laws.'"  *Porina v. Marward Shipping Co.*, 521 F.3d 122, 127 (2d Cir. 2008) (quoting Fed. R. Civ. P. 4(k)(2)).

Here, because it is undisputed that the first two requirements are met, the Court analyzes only the third requirement, that the exercise of jurisdiction be "consistent with the United States Constitution and laws."  Fed. R. Civ. P. 4(k)(2).  This requirement is met when "the exercise of jurisdiction comports with the Due Process Clause of the Fifth Amendment."  *Dardana Ltd. v. Yugansknefgaz*, 317 F.3d 202, 207 (2d Cir. 2003).  "[D]ue process requires a plaintiff to allege (1) that a defendant has 'certain minimum contacts' with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances."  *In re Terrorist Attacks*, 714 F.3d at 673 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  "The due process analysis for Rule 4(k)(2) jurisdiction hinges on whether the non-resident has sufficient minimum contacts with the United States as a whole instead of with the specific forum state."  *George Moundreas & Co SA v. Jinhai Intelligent Mfg. Co*, No. 20-CV-2626, 2021 WL 168930, at *11 (S.D.N.Y. Jan. 18, 2021) (citing *Porina*,

521 F.3d at 127).

### i. Minimum Contacts

As to the first factor, "[t]o determine whether a defendant has the necessary 'minimum contacts,' a distinction is made between 'specific' and 'general' personal jurisdiction." *In re Terrorist Attacks*, 714 F.3d at 673. "Specific jurisdiction exists where a forum exercises personal jurisdiction over a defendant 'in a suit arising out of or related to the defendant's contacts with the forum.'" *Porina*, 521 F.3d at 128 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). "A court's general jurisdiction over a non-resident, on the other hand, is based on a defendant's general business contacts with the forum, and 'permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts.'" *Id.* (quoting *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996)).

The Second Circuit has held that to establish general jurisdiction under Rule 4(k)(2), the plaintiff must show that the defendant had "continuous and systematic general business contacts" with the United States. *Porina*, 521 F.3d at 128. In assessing general jurisdiction, "we examine a defendant's contacts with the forum state over a period that is reasonable under the circumstances—up to and including the date the suit was filed." *Id.* (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569 (2d Cir. 1996)).

Here, Defendant's contacts with the United States were "continuous and systematic" such that the exercise of general jurisdiction comports with the due process clause of the Fifth Amendment. Defendant has hundreds of employees in the United States, regularly operates flights to and from thirteen United States cities, and derives billions of dollars each year from its United States operations.[2] Ozcan Decl. ¶¶ 2, 5–7. Those significant and ongoing operations rise to the

---

[2] The Second Circuit noted that "as the plaintiffs informed the District Court and THY does not dispute, THY services airports in eight States and lists sales and cargo offices in each of those States. The plaintiffs also observed that THY transacts a great deal of business in the United States, profiting from daily flights that travel in and out of multiple US

level of "continuous and systematic." *Cf. Balintulo v. Daimler AG (In re S. African Apartheid Litig.)*, 643 F. Supp. 2d 423, 436 (S.D.N.Y. 2009) ("The notion that a company may do [more than $100 million dollars] of business in the United States without anticipating application of general jurisdiction is implausible at best."). Accordingly, Plaintiffs have met the first requirement for the exercise of personal jurisdiction under the Fifth Amendment, that the "defendant has 'certain minimum contacts' with the relevant forum[.]" *In re Terrorist Attacks*, 714 F.3d at 673 (quoting *Int'l Shoe Co*, 326 U.S. at 310).

Defendant urges the Court to instead apply the standard applicable to the general jurisdiction inquiry under the Fourteenth Amendment, as the Court did in its September Opinion, and consider whether Defendant's contacts with the United States rendered it "essentially at home in the forum." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). But the application of that test would be improper. The Second Circuit has not yet had the occasion to rule on whether the Supreme Court's decision in *Daimler* supplants the "continuous and systematic" test under Rule 4(k)(2) with *Daimler's* "essentially at home" test. District Courts are "obliged to follow [Second Circuit] precedent, even if that precedent might be overturned in the near future." *Packer v. Raging Capital Mgmt., LLC*, 105 F.4th 46, 54 (2d Cir. 2024) (quoting *United States v. Wong*, 40 F.3d 1347, 1373 (2d Cir. 1994)). "In rare cases, a district court can decline to follow [Circuit] precedent if it concludes that an intervening Supreme Court decision has so clearly undermined [that] precedent that it will almost inevitably be overruled." *Id.* at 54 n.36. But the Second Circuit "caution[s]

---

states daily, and it facilitate[s] and implement[s] this travel by way of cargo personnel, mechanics, flight crews, sales agents, and executives." *Lensky*, 2023 WL 6173334, at *3 (quotations and citations omitted) (alterations in the original). In its original briefing before this Court, Plaintiff did indeed include those details in a brief. *See* Dkt. No. 25. But Plaintiff did not present those facts to the Court in an affidavit. Nor were they included in any pleading. Of course, "[a]n attorney's unsworn statements in a brief are not evidence." *Kulhawik v. Holder*, 571 F.3d 296, 298 (2d Cir. 2009) (per curiam). Because, as described, in its supplemental briefing, Defendant submitted a sworn affidavit containing facts that are sufficient to establish that Defendant had continuous and systematic contacts with the United States, the Court need not evaluate whether the record that was properly before it at the time of the original motion to dismiss would by itself support a finding of general jurisdiction.

District Courts against preemptively declaring that our caselaw has been abrogated by intervening Supreme Court decisions." *Id.* at 54.

This is not one of those "rare cases" in which "an intervening Supreme Court decision has so clearly undermined [the Second Circuit's] precedent that it will almost inevitably be overruled." *Packer*, 105 F.4th at 54 n.36. As the Second Circuit observed in its order remanding this case, it remains an "open question whether general jurisdiction under Rule 4(k)(2)(B) must be determined pursuant to the 'essentially at home' inquiry or the 'continuous and systematic' inquiry." *Lensky*, 2023 WL 6173334, at *2.[3] Therefore, the Court must apply the "continuous and systematic" test mandated by Second Circuit precedent. As described, that inquiry leads the Court to the conclusion that Defendant has sufficient contacts with the United States to give to rise to general jurisdiction under Rule 4(k)(2).[4]

---

[3] The Second Circuit observed that "[a]mple case law (albeit pre-dating *Daimler*) applied a different test to determine whether general jurisdiction exists under Rule 4(k)(2)(B)—that is, whether the defendant's contacts with the United States as a whole are "continuous and systematic" rather than sporadic. . . . [A]ssuming *Porina* is the applicable standard under Rule 4(k)(2), whether THY's alleged contacts with the United States as a whole are 'continuous and systematic' is not an issue that the District Court clearly addressed or that we should attempt to resolve in the first instance." *Lensky*, 2023 WL 6173334, at *3.

[4] Because the Court holds that Rule 4(k)(2) confers general jurisdiction over Defendant, and the Second Circuit mandated only that the Court "determine whether there is a basis . . . for exercising general jurisdiction *or* specific jurisdiction over THY under Rule 4(k)(2)," *Lensky*, 2023 WL 6173334 at *3 (emphasis added), the Court need not reach the question of whether Plaintiffs' suit sufficiently arises out of or relates to Defendant's contacts with the forum to confer specific jurisdiction under Rule 4(k)(2). Nevertheless, the Court notes that in the Second Circuit, the standard for determining whether a suit arises out of or relates to the defendant's contacts with the forum "depends on the relationship among the defendant, the forum, and the litigation[.]" *SPV OSUS, Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018) (quoting *Chew v. Dietrich*, 143 F.3d 24, 29 (2d Cir. 1998)). "Where the defendant has had only limited contacts with the state it may be appropriate to say that he will be subject to suit in that state only if the plaintiff's injury was proximately caused by those contacts. Where the defendant's contacts with the jurisdiction that relate to the cause of action are more substantial, however, it is not unreasonable to say that the defendant is subject to personal jurisdiction even though the acts within the state are not the proximate cause of the plaintiff's injury." *Id.* (quoting *Chew*, 143 F.3d at 29).

While the Court need not base its ruling on this analysis, it observes that Defendant's substantial contacts with the United States, including its hundreds of United States-based employees and billions in annual revenue from its United States operations, would likely compel the application of a but-for standard. *See Dudnikov v. Chalk & Vermilion Fine Arts*, 514 F.3d 1063, 1078 (10th Cir. 2008) (noting that the but-for test for personal jurisdiction hinges on whether "any event in the causal chain leading to the plaintiff's injury is sufficiently related to the claim to support the exercise of specific jurisdiction."); *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 914 (9th Cir. 1990) ("An action arises out of contacts with the forum if, 'but for' those contacts, the cause would not have arisen.").

### ii. Reasonableness

Having determined that the minimum contacts requirement is met, the Court next considers whether "the exercise of jurisdiction is reasonable in the circumstances." *In re Terrorist Attacks*, 714 F.3d at 673 (quoting *Int'l Shoe Co.*, 326 U.S. at 316). "While the exercise of jurisdiction is favored where the plaintiff has made a threshold showing of minimum contacts at the first stage of the inquiry, it may be defeated where the defendant presents 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477–78 (1985)). To determine whether the exercise of personal jurisdiction over a particular defendant would be reasonable, the court must evaluate "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Id.* at 568 (citing *Asahi Metal Indus. Co. v. Super. Ct.*, 480 U.S. 102, 113–14 (1987)).

Here, Defendant has not argued that the exercise of jurisdiction would be unreasonable under the circumstances. Nevertheless, the Court holds that the five factors weigh in favor of the exercise of jurisdiction. First, the burden on Defendant is modest, given that Defendant is a large, well-resourced corporation with significant business operations in the United States. Second, the United States, as a party to the Montreal Convention, has an interest in enforcing the convention when its residents are injured by air carriers. Third, Plaintiffs have a strong interest in litigating the case in the United States because they are residents of New York. Fourth, Plaintiffs' residence in New York, and Defendant's substantial presence in the United States, make resolution of the controversy in the United States convenient. And finally, the United States and Turkey are both

9

parties to the Montreal Convention and therefore have a shared interest in facilitating its enforcement. Allowing Plaintiffs' to litigate their case in the United States furthers that goal.

Because both the minimum contacts and reasonableness requirements are met, the exercise of jurisdiction over Defendant comports with the due process clause of the Fifth Amendment. Therefore, the three requirements of Rule 4(k)(2) are satisfied, and the Court holds that Rule 4(k)(2) confers general jurisdiction over Defendant.

### B. Defendant's Improper Montreal Convention Argument

The Court also addresses Defendant's argument, raised for the first time in its supplemental reply brief, that the Montreal Convention does not apply to any of Plaintiffs' claims. Plaintiffs have moved to strike this argument under Federal Rule of Civil Procedure 12(f) on the ground that it was improperly raised in a reply brief. *See* Dkt. No. 45. The Court agrees.

As an initial matter, an analysis of whether the Montreal Convention applies is not within the Second Circuit's mandate to "determine whether there is a basis, consistent with this order, for exercising general jurisdiction or specific jurisdiction over THY under Rule 4(k)(2)." *Lensky*, 2023 WL 6173334 at *3. The applicability of the Montreal Convention as to the case as a whole falls well outside of the scope of this mandate, and therefore it would not be proper for the Court to consider it. *Cf. Parmalat Capital Fin. Ltd. v. Bank of Am., Corp.*, 671 F.3d 261, 270-71 (2d Cir. 2012) (holding that it was improper for the district court to entertain an argument beyond the scope of the mandate) ("[B]oth the specific dictates of the mandate and the spirit of the mandate focus entirely on the question of timely adjudication, with no mention of an alternative basis for denying mandatory abstention. It is not reasonable to construe the mandate as allowing alternative, dispositive bases for denying abstention to be raised for the first time on remand, particularly when the cases had been pending for years and had already been the subject of an appeal.") (internal quotations omitted).

Moreover, "it is well settled in the Second Circuit that a party may not raise an argument for the first time in his reply brief[.]" *Content v. Curran*, 2022 U.S. Dist. LEXIS 179290, at *3 (S.D.N.Y. Sep. 30, 2022) (quoting *MSP Recovery Claims, Series LLC v. AIG Prop. Cas. Co.*, No. 20 Civ. 2102, 2021 WL 3371621, at *2 n.2 (S.D.N.Y. Aug. 2, 2021)) (collecting cases).[5]  Defendant's argument is especially improper because the parties have now completed two rounds of briefing on this motion, and Defendant failed to raise its argument regarding the Montreal Convention until its second reply brief.  *Cf. Metro Woodworking, Inc. v. Samson Mgmt.*, LLC, No. 18 CIV. 5411 (VM), 2018 WL 11542582, at *1 (S.D.N.Y. Sept. 17, 2018) (holding that an argument was improperly raised in a reply brief for the addition reason that the party had "multiple prior opportunities to" raise the argument). Accordingly, the Court disregards it.

## V.    CONCLUSION

For these reasons, Defendant's motion to dismiss the complaint pursuant to Rule 12(b)(2) is DENIED.  The Clerk of Court is directed to terminate the motions pending at Dkt. Nos. 40 and 45.

SO ORDERED.

Dated:  July 28, 2024
New York, New York

_____
GREGORY H. WOODS
United States District Judge

---

[5] Defendant cites several cases holding that there are exceptions to this rule, allowing a district court discretion to consider arguments raised for the first time in reply briefs. *See Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 226-27 (2d Cir. 2000) ("[R]eply papers may properly address new material issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party.").  Still, the Court declines to consider Defendant's argument in light of the many previous opportunities Defendant has had to raise the argument and the scope of the Second Circuit's mandate.